U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 29, 2008**                          **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| FORT WORTH OSTEOPATHIC | § | CASE NO. 05-41513-DML-7 |
| HOSPITAL, INC., D/B/A OSTEOPATHIC | § | |
| MEDICAL CENTER OF TEXAS, AND | § | |
| | § | |
| HEALTH CARE OF TEXAS, INC., D/B/A | § | CASE NO. 05-41503-DML-7 |
| OSTEOPATHIC HEALTH SYSTEM OF TEXAS, | § | |
| | § | |
| DEBTORS. | § | |
| | § | |

| | | |
|---|---|---|
| SHAWN K. BROWN, | § | |
| CHAPTER 7 TRUSTEE, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | ADVERSARY NO. 07-04015 |
| | § | |
| ROBERT C. ADAMS, D.O., ESQ., ET AL., | § | |
| | § | |
| DEFENDANTS. | § | |

## MEMORANDUM OPINION

Before the court are (1) Defendants Robert C. Adams, D.O., Sam W. Buchanan, D.O.,

and J. Gregory Upp's Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the

Alternative, Motion to Dismiss Count Seven for Failure to State a Claim (the "Dismissal

Motion") and (2) Plaintiff Shawn K. Brown, Chapter 7 Trustee's Motion to Strike, and Objections to, Declarations of (1) Ronald R. Blanck, D.O., (2) Robert Adams, D.O., (3) Sam W. Buchanan, D.O., and (4) J. Gregory Upp Attached to Defendants Adams's, Buchanan's, and Upp's Motion to Dismiss for Lack of Subject Matter Jurisdiction (the "Strike Motion" and, together with the Dismissal Motion, the "Motions"). The Dismissal Motion was filed by Robert C. Adams ("Adams"), Sam W. Buchanan ("Buchanan") and J. Gregory Upp ("Upp" and, with Adams and Buchanan, "Movants"), three of the Defendants in the captioned adversary proceeding, and the Strike Motion was filed by Plaintiff Shawn Brown (the "Trustee"), chapter 7 trustee for Fort Worth Osteopathic Hospital ("FWOH") and its parent Health Care of Texas, Inc. ("HCT").[1]

The parties have fully briefed the issues presented by the Motions. The court held a hearing on the Dismissal Motion on July 8, 2008, at which it heard oral argument.[2] The court had previously advised the parties it would not require argument on the Strike Motion.

The court considers the Motions by virtue of its jurisdiction under 28 U.S.C. §§ 1334(b) and 157(b)(1).[3] This memorandum opinion embodies the court's findings and conclusions. FED. R. BANKR. P. 7052.

---

[1] The Trustee also filed a motion for leave to file a brief in sur-reply in connection with the Dismissal Motion. At the hearing described below, the Trustee conceded that, in light of the opportunity for oral argument, no sur-reply was necessary. To the extent the motion retains vitality it is, accordingly, denied.

[2] With the court's consent the parties submitted additional authorities after the hearing.

[3] This adversary proceeding was the subject of a motion to withdraw the reference. The District Court ruled that, while the adversary proceeding should be withdrawn to that court for trial, this court should retain the adversary proceeding and rule on all disputes, including dispositive motions, until actual trial was in prospect. *See Brown v. Adams*, Order Granting Motion to Withdraw Reference of Nov. 2, 2007, No. 4:07-CV-206-Y (Doc. #13)(N.D. Tex. 2007).

## I.  The Strike Motion

By the Strike Motion, the Trustee asks that the court strike and decline to consider, in ruling on the Dismissal Motion, declarations made under penalty of perjury by Adams, Buchanan, Upp and Ronald R. Blanck ("Blanck") and offered by Movants in support of their position.  Because the court concludes that, even taking these declarations into account, the Dismissal Motion must be denied, the Strike Motion will also be DENIED.

## II.  The Dismissal Motion

### A.    Background

FWOH and HCT, provided in-patient hospital and other health services in the Tarrant County area.  Movants all served as directors of FWOH, and Adams also served on the board of HCT.  Each of Adams and Buchanan was an associate professor on the faculty of the University of North Texas Health Science Center ("UNTHSC"), of which Blanck became president in 2000. After Blanck assumed office, Upp joined UNTHSC in an administrative capacity.  Blanck asked each of Movants to continue to serve on FWOH's board and approved of Adams's service as a director of HCT.  He did this because FWOH served the functions of a teaching hospital for UNTHSC.[4]

In late 2004, FWOH ceased operations, and, in February 2005, FWOH and HCT filed chapter 7 cases in this court.  The Trustee was appointed at that time in both cases and began investigating the events leading to the bankruptcy of FWOH and HCT.  On February 9, 2007, the Trustee commenced this adversary proceeding in which he alleges, *inter alia*, that the directors

---

[4]     UNTHSC is not permitted to own a hospital.  Nothing before the court suggests that the relationship between FWOH and UNTHSC was established by law or contract; the court thus determines, for purposes of deciding the Dismissal Motion, that the two entities were informally associated.  However, even if the relationship of the entities were established by contract, unless the contract specifically addressed  board representation at FWOH for UNTHSC, the court's views would remain the same.

and officers of FWOH and HCT, including Movants, breached their fiduciary duties to those entities and engaged in a conspiracy to continue FWOH's operations to the detriment of its creditors in order to gain for themselves economic benefit.

## B.    Basis of the Dismissal Motion

Pursuant to Fed. R. Bankr. P. 7012(b) (adopting Fed. R. Civ. P. 12(b)) Movants state two theories for dismissal of the adversary proceeding in whole or in part as to them.  First, they argue that they are entitled to the benefit of sovereign immunity by reason of their employment by UNTHSC, and so the adversary proceeding must be dismissed as to them pursuant to Rule 12(b)(1).  Second, they argue that Count VII of the Trustee's complaint, based on conspiracy, must be dismissed under Rule 12(b)(6) for failing to state a claim upon which relief may be granted because the Trustee does not "allege specific facts that would establish that [Movants] acted with a specific intent to cause injury to FWOH or HCT."  Dismissal Mot. at 14.

## C.    Standards for Relief

Different standards are applicable for granting relief under Rules 12(b)(1) and 12(b)(6). The court is mindful that a motion to dismiss sometimes may be more properly brought as a motion for summary judgment. *See, e.g., Redmon ex rel. Redmon v. United States*, 934 F.2d 1151, 1155 (10th Cir. 1991) ("Rule 56 rather than Rule 12(b)(1) should be used in such instances where 'the jurisdictional issue is intertwined with the merits of the case . . .'") (citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987)).  For reasons discussed below, therefore, the court tests Movants' sovereign immunity argument also as a request for relief under Fed. R. Civ. P. 56 (applicable pursuant to Fed. R. Bankr. P. 7056).

1.      Rule 12(b)(1) Standard

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.'" *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).   A defendant's correct assertion of sovereign immunity constitutes a reason to grant a motion to dismiss under Rule 12(b)(1) because the court lacks subject matter jurisdiction to adjudicate the dispute.  *See Paskauskiene v. Univ. of N. Tex. Health Sci. Ctr.*, No. 4:05-CV-501-Y, 2007 WL 719889, at *1 (N.D. Tex. Mar. 9, 2007).   In deciding a motion to dismiss under Rule 12(b)(1), a court may consider matters outside the pleadings.  *See Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004).   In the case at bar, the court's jurisdiction over the Trustee's claims against Movants is clear and indisputable *unless* Movants are in fact entitled to claim sovereign immunity.  If the claim of immunity is valid, on the other hand, the Dismissal Motion must be granted.

2.      Rule 12(b)(6) Standard

Under Rule 12(b)(6), applicable pursuant to Fed. R. Bankr. P. 7012, a party moving for dismissal has the burden of showing that no claim has been stated.  2 MOORE'S FEDERAL PRACTICE § 12.34[1][a] (3d ed. 2006).  A Rule 12(b)(6) motion may be granted either because a legal remedy based on the alleged facts does not exist[5] or because the facts as alleged, even if

---

[5]      *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (holding that a court must not dismiss a complaint unless it appears to certainty that the plaintiff would not be entitled to relief under any legal theory that might plausibly be suggested by the facts alleged); *see also Santana v. Zilog, Inc.*, 95 F.3d 780 (9th Cir. 1996).

true, do not satisfy the legal requirements of the pleaded cause of action.[6]  While a complaint attacked pursuant to Rule 12(b)(6) does not need to contain detailed factual allegations, (*Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do.  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955-65 (2007) (citing *Papsan v. Allain*, 478 U.S. 265, 286 (1986)) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a plaintiff's right to relief beyond the speculative level.  *See* 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.").   On the other hand, the court must assume that all the allegations in the complaint are true (even if doubtful in fact),[7] and dismissal under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *See, e.g., Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

 3.     Rule 56 Standard

        The movant bears the initial burden to show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  *See Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 411-12 (5th Cir. 2008) (citing FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law. *See*

---

[6]        *See, e.g., Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1157 (5th Cir. 1992) (affirming district court's dismissal of claims because the facts pleaded by the plaintiffs did not state a claim under either RICO or federal civil rights law).

[7]        *Twombly*, 127 S. Ct. at 1965; *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In deciding whether there is a disputed material fact issue precluding summary judgment, the court must take as true all evidence supporting the respondent's claim, indulge every reasonable inference, and resolve any doubts in the respondent's favor. *See Norwegian Bulk Transp. A/S*, 520 F.3d at 411-12. Summary judgment should not be granted if the evidence indicates that a reasonable fact-finder could find in the respondent's favor. *See Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Where the movant has met its initial burden, the respondent "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [and] must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87 (quoting Rule 56(e)) (emphasis in original omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for [the respondent], there is no 'genuine issue for trial.'" *Id*. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

**D.      Sovereign Immunity**

Several doctrines limiting the rights of plaintiffs based on a defendant's assertion of the state's sovereignty exist. Two of the doctrines asserted by Movants – those based on Texas common law and the 11th Amendment to the Constitution – are jurisdictional. *See In re Hinterlong*, 109 S.W.3d 611, 627 (Tex. App.—Fort Worth 2003); *see also Miller v. Tex. Tech Univ. Health Sci. Ctr.*, 421 F. 3d 342, 349 (5th Cir. 2005). A third theory of immunity – official immunity – is an affirmative defense to claims.[8] *See Vela v. Rocha*, 52 S.W.3d 398, 404 (Tex. App.—Corpus Christi 2001). For reasons discussed below, the court considers the official

---

[8]      Some related theories – e.g., legislative immunity – are not implicated in the case at bar, at least to the court's knowledge and understanding.

immunity doctrine in connection with determining if Movants would be entitled, based on what the court has before it, to summary judgment.[9]

### 1. Common Law and 11th Amendment Immunity

In order to defeat the court's jurisdiction, the immunity asserted by movants must either be pursuant to the common law of Texas or the 11th Amendment to the Constitution. *See Miller*, 421 F. 3d at 349; *Hinterlong*, 109 S.W.3d at 627; *Vela*, 52 S.W.3d at 404. Because the court concludes that Movants do not satisfy the prerequisites for either category of immunity, the Dismissal Motion must be denied.

First, in order to be entitled to immunity under Texas common law, Movants would have to be named in the adversary proceeding in their official capacity. *See Vela*, 52 S.W.3d at 403. The court concludes that Movants were sued in their capacity as directors of FWOH (and, in the case of Adams, HCT). As the Trustee argues, they were sued as individuals serving in their director roles, not as officials of the state.[10]

Second, 11th Amendment immunity can be invoked if the action is in fact one seeking recovery from the state. At oral argument, in response to a question from the court, counsel for Movants pointed to Texas Civil Practice and Remedies § 104.001(5), which he asserted was a statute on the basis of which the state would be liable for any judgment against any of Movants.[11]

---

[9]    The court recognizes that the Trustee has not attempted to make a defense to a motion under Rule 56 (nor have Movants necessarily exhausted their ability to make an affirmative case for summary judgment purposes). However, the court tests the Dismissal Motion at this time against the requirements of official immunity both to make clear that, even if official immunity could be asserted as jurisdictional, the Dismissal Motion would fail, and also to provide guidance to the parties.

[10]    Movants seem to have inverted the burden of showing capacity – they insist the Trustee should have made clear in his pleading that Movants were *not* sued as employees of UNTHSC. Though the court holds that that is abundantly clear in the Trustee's complaint, the court further concludes that, considering the nature of the adversary proceeding, it would be inappropriate to insist that the Trustee plead negative.

[11]    The court notes that, in a parallel action (*see* Attorney Gen. of Texas v. Brown, No. 07-04075-DML (Bankr. N.D. Tex. filed June 14, 2007)), the Attorney General of Texas has indicated he may claim against the directors of FWOH on a theory similar to that pressed by the Trustee. When asked about Movants'

That statute,[12] however, provides for *indemnification* of an individual by the state after a showing of entitlement. Tex. Civ. Prac. & Rem. § 104.001(5) (Vernon 2007). Thus, the Trustee is not seeking recovery from the State of Texas, though § 104.001(5) provides a mechanism for any of Movants to recover, upon a proper showing, from the state what he pays to satisfy any judgment the Trustee may obtain against him.

Movants seem to have conflated immunity that is a bar to jurisdiction with official immunity, which is an affirmative defense. Thus, Movants' reliance on *Hafer v. Melo*, *Will v. Michigan Department of State Police*, and *Dallas County Mental Health and Mental Retardations v. Bossley*, is misplaced. *See Hafer v. Melo*, 502 U.S. 21 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989); *Dallas County Mental Health and Mental Retardation v. Bossley,* 968 S.W.2d 339 (Tex. 1998). Nonetheless, as discussed below, Movants in any event have not, at this point, posited facts sufficient to support a claim of even official immunity.

## 2. Official Immunity

Official immunity is an affirmative defense and is not jurisdictional. *See Vela*, 52 S.W.3d at 404. Because it is an affirmative defense, the burden is on Movants to prove they are immune as to the claims of the Trustee. To do so, Movants must show that their actions involved "performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting

---

ability to assert immunity against the sovereign whose immunity they claim, counsel earnestly assured the court that claims by the State of Texas also were precluded by Movants' sovereign immunity. While puzzled by the appearance of circularity in this contention, the court cheerfully cedes the issue to whatever forum, if any, eventually adjudicates the Attorney General's claims.

[12]     Texas Civil Practice & Remedies § 104.001(5) provides:

"In a cause of action based on conduct described in Section 104.002, the state shall indemnify the following persons, without regard to whether the persons performed their services for compensation, for actual damages, court costs, and attorney's fees adjudged against . . . a person serving on the governing board of a foundation, corporation, or association at the request and on behalf of an institution of higher education, as that term is defined by Section 61.003(8), Education Code, not including a public junior college . . ."

within the scope of their authority." *Meecorp Capital Mkts., LLC v. Tex-Wave Indus. LP*, No. C-06-148, 2006 WL 2883054, at *5 (S.D. Tex. Oct. 5, 2006) (quoting *City of Lancaster v. Chambers*, 883 S.W. 2d 650, 653 (Tex. 1994)).   Even considering the declarations of Movants and Blanck, and even assuming the Trustee cannot controvert the "facts" stated in those declarations, the court could not now find that this test has been met.

Moreover, virtually all the cases cited by Movants which address official immunity are inapposite in that each involved a defendant who was a government official acting in his or her official capacity.  *See Seminole Tribe v. Florida*, 517 U.S. 44, 51 (1996) (Governor allegedly refused to negotiate in good faith pursuant to a tribal-state compact); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 92 (1984) (officials at a mental health institution provided "inadequate" care to their patients); *Edelman v. Jordan*, 415 U.S. 651, 655 (1974) (Illinois public aid officials allegedly failed to comply with certain federal regulations applicable to the performance of their duties); *Larkins v. Univ. of Tex. Med. Branch at Galveston*, No. 1:07-CV-607, 2007 WL 420628 at *1 (E.D. Tex. Nov. 26, 2007) (employer sued for racial and age discrimination based upon certain employment decisions he made);  *Paskauskiene v. Univ. of N. Texas Sci. Ctr.*, No. 4:05-CV-501-Y, 2007 WL 719889, at *1 (N.D. Tex. Mar. 9, 2007) (supervisor, acting as such, fired an employee); *Bossley,* 968 S.W.2d at 340-341 (members of a hospital staff left a door open while in the course of job performance, allowing a patient to escape).

Given this jurisprudence, the court would not consider official immunity a tenable defense without a showing of a closer nexus between Movants' service as directors of FWOH (and, in Adams's case, HCT) and their official roles with UNTHSC.  None of the Trustee's allegations implicated any of Movants' duties or authority as employees of UTNHSC.  The court

has been provided with no evidence that Movants were *required* as one of their duties to UNTHSC to serve on the board of FWOH or HCT. Their work as directors has not been shown to be in furtherance of their duties as teachers (or, in Upp's case, as an administrator). Nor was there any requirement, apparently, that UNTHSC have representatives on the board of FWOH or HCT.

In summary, the court does not consider it appropriate or consistent with the law to permit directors of a not-for-profit entity to clothe themselves in the protective garb of their state offices and so shield themselves from accountability for their conduct based on so tenuous a connection between their official and non-profit roles as has so far been here established. Thus, although Movants may at some point in the future be able to prove entitlement to official immunity, at this point, even taking the Dismissal Motion as one for summary judgment, Movants have not demonstrated applicability to them of that defense. Thus, the Dismissal Motion must be DENIED, though without prejudice to reurging the defense at trial or by a further summary judgment motion in the future.[13]

## E.     Conspiracy

Movants ask in the alternative that the court dismiss the Trustee's conspiracy claim. Based on, *inter alia*, the Texas Supreme Court case of *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716 (Tex. 1995), Movants argue that the Trustee's claim fails as a matter of law because the Trustee did not allege that Movants intended, by their conspiracy, to do harm to FWOH. Thus, in *Triplex*, the Court stated that "[f]or a civil conspiracy to arise, the parties must

---

[13]     The court has repeatedly been urged by Movants and other Defendants to consider the burden the individual Defendants must bear in defending in this adversary proceeding. The court has previously cautioned the Trustee to take this burden into account, since it is clear that defending this adversary proceeding is likely to be costly. On the other hand, adoption by Defendants of tactics which are unlikely to be successful – a category into which Movants' claim of sovereign immunity falls – cannot but serve to dilute the court's sympathy for the plight of Defendants.

be aware of the harm or wrongful conduct at the inception of combination or agreement." *Triplex*

*Commc'ns*, 900 S.W.2d at 719.

The court reads *Triplex* differently than do Movants.  In *Triplex* the plaintiff in essence

sought recovery under a conspiracy theory for negligence, and the Court concluded that there

could not be a civil conspiracy to commit negligence.  *Triplex Commc'ns*, 900 S.W.2d at 720.

In the case at bar, the court does not understand that the Trustee claims that Movants and

the other Defendants conspired to commit negligence.  Rather, the Trustee alleges that Movants

and others conspired to advance their own economic interests through neglect of their duties to

FWOH.   The court concludes that, on the face of his amended complaint, the Trustee has

sufficiently alleged that Defendants, including Movants, reached an agreement to act together to

keep FWOH in operation in order to benefit themselves and contrary to – in neglect of – their

duties as officers and directors of FWOH.[14]   The court thus concludes that the Dismissal Motion,

---

[14]       The amended complaint includes the following allegations:

(1)  "Sandelin and the other FWOH and HCT Director and Officer Defendants ignored rising costs and
decreasing income of FWOH and pursued their entrepreneurial ends to the detriment of Debtors."
Comp. ¶ 62.

(2)  "Once again the case covenant was violated . . . During this time frame, however, the discussions in
both the HCT and FWOH Board meetings regarding the Medical Office Building and the Surgery
Center projects continued without objection or inquiry. . ." *Id*. at ¶ 138.

(3)  "Throughout FY 2001- FY 2005, Defendants engaged in or allowed extreme mismanagement, wasting
of corporate assets, conflicted transactions, and unjust enrichment – all contributing to the deepening
insolvency of FWOH and HCT, without engaging in a process to consider the conflicted transactions
and ensure fairness, and failing to preserve or maximize the value for creditors." *Id*. at ¶ 177.

(4)  "[O]ver the ten-year period, 1994 through 2004, millions of dollars were diverted from Debtors to fund
the LIFE Program, at the direction or acquiescence of the HCT and FWOH Officers and Directors, to
the detriment, loss, and deepening insolvency of Debtors, all to the detriment of their creditors." *Id*. at
¶ 178.

(5)  "Also, Sandelin and Drakeford, possibly with the assistance of other Officers and Directors, used the
LIFE Program as an example when they attempted to (and did) market this type of insurance product
to other charitable organizations . . . and deepened the insolvency of those companies to the increased
damage of Debtors' creditors." *Id*. at ¶ 182.

(6)  "On information and belief, Beckwith, and possibly other interested directors (including doctors who
may have been interested in practicing at the Surgery Center even if they did not have an equity
ownership interest) did not recuse themselves from the discussion and consideration of the proposal to
contribute Debtors' real property to FWOSC." *Id*. at ¶ 183.

(7)  "The Hospital did not close until October 2004, and the Debtors did not declare Chapter 7 Bankruptcy
litigation until February 2005.  Thus, the HCT and FWOH Officers continued to receive salaries,

to the extent it raises the issue of the sufficiency of the Trustee's conspiracy count, must be DENIED.

## IV.  Conclusion

For the reasons stated in this memorandum opinion, the Motions are DENIED; provided, however, that denial of the Dismissal Motion is without prejudice to Movants raising the official immunity defense at trial or, following completion of discovery, by motion for summary judgment.

It is so ORDERED.

# # # # END OF OPINION # # # #

---

benefits or other financial incentives and the HCT and FWOH Directors who were doctors continued to use the Hospital's facilities for their financial gain that they otherwise would not and should not have received from Debtors. . ." *Id*. at ¶ 188.